# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EUGENE EDWARD WINDER, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-13-748 |
| GARY MAYNARD, | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM

Pending is self-represented Plaintiff Eugene Edward Winder's complaint under 42 U.S.C. § 1983 (ECF No. 1). Defendant Gary Maynard, by his counsel, has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment with affidavits and verified exhibits. ECF No. 15. Winder has filed a reply with a declaration and exhibits. ECF No. 19. No hearing is needed to resolve the issues presented. *See* Local Rule 106.5 (D. Md. 2011). For reasons to follow defendant's motion for summary judgment IS GRANTED.

## BACKGROUND

In this complaint, Winder, an inmate at the Jessup Correctional Institution (JCI) in Jessup, Maryland, claims defendant hindered his religious practice. Winder, who identifies himself as member of the Wiccan community, presents allegations concerning the celebration of the Samhain Feast. ECF No. 1. As redress, he seeks declaratory relief and monetary damages. *Id*.

**I.  Background**

This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551

U.S. 89, 94 (2007). That review liberally construes plaintiff's pleadings in light of the fact that he is proceeding pro se.

Winder, Secretary of the Wicca Faith Group at JCI, claims that on August 2, 2010, he submitted a proposal to Chaplain Peterson for a holy day observance and ceremonial meal. ECF No. 1. He indicates that the proposal was approved but the ceremonial meal was never provided. Additionally, Winder claims that he has been denied access to dietary facilities in order to store and cook foods in preparation for his religious feast. He claims other mainstream religions are permitted access to these facilities. He also indicates that kosher meals and halal meals are served to religious groups but his religious meal requests are not honored. Specifically, Winder takes issue with the failure to provide pork through the dietary department to him and other members of the Wiccan community. *Id.*

The record evidence demonstrates that Winder's proposal for holiday observance and ceremonial meal presented to Chaplain Peterson included a list of several food times to be used for the Samhain Feast celebrated by the Wiccan Community. ECF No. 15, Ex. 1-2. Included within the requested items were pork chops and bacon, or alternatively pork ribs, tenderloin, or medallion. The Chaplain approved the feast but denied the request for pork items. *Id.*, Ex. 3. Winder filed a grievance and was advised that pursuant to DOC policy and procedures the dietary department could not purchase or prepare the requested pork items, but that Winder was free to purchase pork items from the commissary. *Id.*, Ex. 3 & 6. An investigation of Winder's claim that he was denied pork products found that he had been provided an alternative means for purchasing pork which was a reasonable accommodation for his religious dietary request. As such his administrative remedy request was found non-meritorious. *Id.*, Ex. 2.

In order to accommodate the needs of all prison inmates, approximately 25 years ago the DOC decided to discontinue the use and supply of pork products and to strictly forbid the use of its kitchens and food preparation tools to prepare pork products. ECF No. 15, Ex. 3. In order to further penological interests regarding budgeting and avoidance of perceived favoritism amongst inmate groups, the DOC has established two menus: the master-cycle menu (which include fish, poultry and meat not including pork) and the lacto-ovo menu. *Id*. The menus provide items which all inmates can eat which fulfill nutritional concerns and do not offend anyone's religious beliefs. *Id.* Inmates desiring to consume pork may purchase pork products from the commissary, which is maintained separately from DOC Food Services. *Id*.

## STANDARD OF REVIEW

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006). (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this court "need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences,

unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id*. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id*. at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### 2.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere

4

allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

**ANALYSIS**

The complaint is filed pursuant to 42 U.S.C. § 1983, which " ' is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that: (1) a right

5

secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## I. Religious Practice

The Free Exercise Clause of the First Amendment applies to the states by virtue of the Fourteenth Amendment. *See Employment Division v. Smith*, 494 U.S. 872, 876-77 (1990). It provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. Amend. I. A prisoner, however, does not enjoy the full range of freedoms as those not incarcerated; rather, state action violates a prisoner's constitutional rights if it burdens a prisoner's religious rights and is not reasonably related to a legitimate penological interest. *See Turner v. Safley,* 482 U.S. 78, 89 (1987). Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). Inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). That right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner*, 482 U.S. at 89-91.

The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison;

and whether readily available alternatives to the regulation would be less restrictive. *See id.*

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The Act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA establishes a statutory protection for the free exercise of religion that exceeds the requirements of the Free Exercise Clause of the First Amendment. *See Madison v. Virginia*, 474 F.3d 118, 127 (4th Cir.2006) (stating that RLUIPA "requires the States to provide prisoners with religious accommodations that are not compelled by the Constitution"). "'RLUIPA adopts a ... strict scrutiny' standard." *Couch v. Jabe,* 679 F.3d 197, 203 (4th Cir. 2012) (quoting *Lovelace v. Lee*, 472 F.3d 174, 198 n. 8 (4th Cir. 2006)). Under RLUIPA, the "plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. If the plaintiff satisfies this requirement, the government must then prove that the challenged policy is the least restrictive means of furthering a compelling governmental interest." *Couch*, 679 F.3d at 200 (internal citations omitted).

Winder fails to provide specific facts to show how the denial of pork products via the dietary staff versus through the commissary substantially impeded his ability to practice his religious beliefs. He thus falls far short of demonstrating that defendants substantially burdened his First Amendment rights. Winder's request for a religious ceremonial meal was approved. Further, Winder was directed that while the requested pork products could not be provided through the dietary department or prepared in DOC kitchen facilities, pork products could

nevertheless be purchased through commissary and consumed at the ceremonial meal. Moreover, Winder has failed to establish that consumption of pork is a requirement of the Wiccan faith. Without such a demonstration, the request for consumption of pork during a Wiccan feast amounts to nothing more than a preference. Neither RLUIPA nor the First Amendment requires a plaintiff's dietary preferences be accommodated. *See Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972).

Winder fails to assert specific facts to show substantial impediment of his ability to exercise his faith. His conclusory and unsubstantiated assertions do not meet his burden to show a policy or practice substantially burdens his exercise of religion. In fact, defendant indicates that many Wiccans are vegetarian and their dietary requirements are met with selections from the no-flesh option of the available menus. ECF No. 15, Ex. 4.

The undisputed facts demonstrate that Winder's request for a ceremonial meal was approved and he was permitted to create the menu for that meal from the regular menu and through commissary. Because Winder failed to meet his burden of persuasion, defendants need not prove that the practice or policy at issue is the least restrictive means of furthering a compelling government interest. *See Couch*, 679 F.3d at 200.[1]

## II. Equal Protection

Plaintiff's final argument is that defendants' accommodation of other religious prisoners through adoption of a religious diet while refusing to provide a religious diet for Wiccan practitioners violates his rights under the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause generally requires the government to treat similarly situated people

---

[1] As RLUIPA's protection exceeds the requirements of the Free Exercise Clause, Winder likewise has failed to establish his First Amendment claim.

alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated plaintiff must demonstrate that he was treated differently than similarly situated inmates and the discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 Fed. Appx. 609, 611 (3rd Cir. 2009). If the discrimination was based on a plaintiff's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest; otherwise, the plaintiff must show that the discrimination did not bear a rational relationship to a legitimate government purpose. *See Cleburne*, 473 U.S. at 440-42.

The key to an equal protection claim here requires a showing "that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1027, 1051 (8th Cir. 1998). Accordingly, "while a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner's claims under the equal protection clause … must still be analyzed in light of the special security and management concerns in the prison system."[2] *Morrison v. Garraghty*, 239 F. 3d 648, 655 (4th Cir. 2001), citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence.")

---

[2] A prisoner's rights under the Constitution must not be inconsistent with his or her status as a prisoner. *See Hudson v. Palmer,* 468 U.S. 517, 523 (1984). Even when strict scrutiny would otherwise be applicable to a given policy, because of the exigencies of prison administration, regulations must only be reasonably related to a legitimate penological interest. *See Thornburgh v. Abbott,* 490 U.S. 401, 409-10 (1989).

The "differences" in treatment between Jewish and Wiccan prisoners arises not out of defendants' intentional discriminatory acts: rather, kosher Jewish diet demands certain food preparation and food choices not required for Wiccan inmates. Neither Jewish nor Muslim inmates receive ritually slaughtered meat. No pork is prepared in DOC kitchens in order to respect the religious dietary requirements of Jewish and Muslim inmates. Winder has failed to demonstrate that the consumption of pork is a tenant of his faith. To the contrary, defendants have demonstrated their inability to provide pork through dietary services due to legitimate penological goals regarding budget and security. The current meal plans were created in order to see that needs of all religious groups are accommodated. No discriminatory animus has been show. Winder is free to purchase pork products through the commissary. This claim fails as a matter of law. For reasons noted above, there is no showing that defendant discriminated against plaintiff because of his religion.

## CONCLUSION

Even when viewed the evidence in the light most favorable to him and all justifiable inferences are drawn in his favor, Winder's claims are factually unsupported and no genuine issue of material fact is presented. Accordingly, defendant's motion for summary judgment will be granted. Judgment will be entered in favor or defendant by separate Order to follow.

Date   February 24, 2014

\_\_\_\_/s/_____
J. Frederick Motz
United States District Judge